MARCH TERM, 1828.

## Gilbert Noyes vs. The Town of Morristown.

In an action brought on the statute, for an injury alleged to have been occasioned by the insufficiency of a public bridge, it is not sufficient, in order to entitle the plaintiff to recover the amount of his loss, for the jury to find that it was occasioned in any degree, either in whole or in part, by the deficiency of the bridge.

THIS was an action of *Trespass on the case*, brought on the statute to recover the amount of damages occasioned to the plaintiff by the insufficiency and want of repair of a certain public bridge in *Morristown*. It was tried in the County Court, October term, 1827, on the *general issue*, ROYCE J. presiding. On trial, it appeared that the bridge in question was a high bridge over *Lamoille river*, eighty feet or more in length, situated in a small village, and in the immediate vicinity of falls, on said river, and passing over a broken rocky bottom—all which circumstances were calculated to render a fall from said bridge extremely dangerous, if not fatal. It also appeared that at the south end of said bridge, an abutment was erected in the high bank of the stream connecting with said bridge, about twenty feet above the bottom of the river—that the abutment was considerably wider at the bank than at the end of the bridge; the latter being twelve feet wide between the upper strings—That the road, in descending to the bridge from the south, entered upon the same in such a manner that the travelled part inclined towards the lower, or westerly side of the bridge—That the abutment on that side was guarded with a railing connected with the railing on the bridge, but upon the upper or easterly side, the top of the abutment was guarded only by a log or stick of timber, fourteen and a half inches in diameter; and this guard or muniment extended from the shore to the railing on the body of the bridge—That the strings of the bridge, and planking or flooring, extended a short distance upon, and over, the abutment—And the railing of the bridge did not extend towards the shore so far as the plank or flooring, by a short distance—the witnesses varying from two to six feet—leaving no other guard but the log or stick of timber aforesaid. It appeared that when the bridge was finished, a stick of round timber, about ten or

ww

twelve feet in length, was fastened upon this spot in an inclined position, reaching from timbers near the end of the railing towards the shore, until the end rested upon the log, aforesaid, where it was pinned down.    This stick had been removed and gone for a long time before the accident; and a witness testified that it was no part of the original bridge, not being directed by the builder, but had been one of the rollers used in building, and was placed there by the witness and another workman, rather in opposition to the will of the builder, who had only directed them to carry it off. It also appeared that the bridge was old, and the town, at the time of the accident, were collecting timber and other materials for a new bridge, which has since been erected in the same place. The flooring of the bridge had become partially unsound, and there were several holes therein, two of which were proved to be near the south end, within 8 or 10 feet of the planking—the largest being near the centre between two and three feet long, and wide enough to admit the foot of a horse.    It appeared that these holes were usually covered with pieces of loose slabs or plank, but the covering was often removed, and the holes open, at which time the rapid stream below was visible through the bridge.    Whether either of these holes were uncovered at the time of the accident, did not certainly appear; but the weight of evidence was, that neither of them was wholly if at all uncovered.    It appeared that the plaintiff came to the bridge from the south in a single waggon drawn by the horse in question, four years old—that he descended the hill, and entered upon the abutment of the bridge, at a moderate and reasonable gait, and the horse, having stepped upon the first or second plank, suddenly sheered and inclined to the right against the aforesaid log or stick of timber, and went over, disengaging himself from the waggon, and fell either perpendicularly, or along the steep rocky bank, about twenty feet into the river, and was thereby destroyed.

The defendants introduced several witnesses who testified that this horse was unusually restive and skittish, and was apt to take fright, especially when passing over bridges—that the plaintiff had owned and used him several months, and was acquainted with his habits—that the plaintiff till within two or three months be-

lore the accident, had for several years,
resided in the immediate vicinity of
the bridge—that at the time of the accident the river was considerably raised by a freshet, and that the plaintiff, in descending the hill to the bridge, did not drive in the centre of the travelled part of the road, but deviated to the right, about half the width of his waggon, so that when the horse began to sheer, the off hind wheel was running within about eighteen inches of the log aforesaid—the abutment being at the place thirteen feet wide. The plaintiff introduced evidence tending to shew, that at the time in question the horse had in a considerable degree recovered of his aforesaid habits, and was not unsuitable in that respect for ordinary business. The defendants made, and insisted in, the following points. That the bridge and abutments were not insufficient, or out of repair, within the meaning of the statute, all the circumstances of the case being considered—that the injury complained of was different from that proved, for that the place where the horse went off was a part of the abutment, and not of the bridge; and that the plaintiff, knowing the habits of his horse, the state of the bridge, and of the stream, was guilty of such carelessness and imprudence in attempting to pass the bridge at the time, and in the manner he did, as precluded his right of recovery. The Court charged the jury, that the place where the horse went off was to be regarded as part of the bridge for the purposes of this action—that whether the bridge, including this place, was insufficient and out of repair, was to be determined by them upon a view of all the evidence and circumstances in the case; that if they found it sufficient, and not out of repair, their verdict might be for the defendants, without any inquiry into the cause of the accident; but if they found it insufficient or out of repair, they would then proceed to inquire into the cause of the loss sustained by the plaintiff. And if they found it wholly occasioned by his own imprudence, or want of care, he could not recover—but if they found it to have been occasioned in any degree, either wholly or in part, by the deficiency of the bridge, this place being regarded as a part, the plaintiff was entitled to recover the amount of his loss. Verdict for the plaintiff.

*The counsel for the defendants argued,* That the sufficiency, of

Orleans, March, 1828.　roads and bridges, contemplated by the
Noyes vs. Morristown.　Statute, is only such as would enable per-
sons, (with, or without loads) to pass with safety; it does not
describe the height, thickness, or strength of muniments to be
erected on the sides of bridges. It is to be construed to answer
the purposes intended by the makers of the law.—That towns
are only bound to exercise ordinary care in the erection of, and
keeping in repair, roads and bridges.—Big. Dig. 810, Lobdell
vs. The Inhabitants of New Bedford.

The injury sustained by the plaintiff is charged in plaintiff's dec-
laration to have been from the bridge, and not elsewhere : This
action, being in case, given by statute, makes it necessary for the
plaintiff in his declaration to set forth the material facts of his
case with legal precision and certainty, so that the evidence may
support, and correspond with, the declaration. There is error in
the charge of the judge, "for that the place where the horse went
off was to be regarded as part of the bridge, for the purposes of
this action—that whether the bridge, including this place, was in-
sufficient,"&c. This place does not appear, nor is it described, or
set forth, in plaintiff's declaration ; it being the abutment where
the horse went off. Bridge is a passage of wood or stone over a
river &c. Abutment, from abut, signifies to border upon.—
Bailey's Dictionary. The locus in quo,being material, should be
set forth with precision, and proof of an injury sustained in a dif-
ferent place constitutes a variance between the declaration and
the evidence.—1 Chitty, 307.

There is error in the charge of the judge in this, "that if they
found the injury to have been occasioned, in any degree, either
wholly, or in part, by the deficiency of the bridge, this place being
regarded as a part, the plaintiff was entitled to recover," without
connecting the carelessness or imprudence of the plaintiff, or man-
ner of driving,or the vices of his horse, and placing them in the
balance against the deficiency of the bridge.

Mr. Sawyer, for the plaintiff. In this cause the court were re-
quested to charge the jury, that the accident having been declared
to have happened on the bridge—and that said bridge was insuf-
ficient ; and the proof adduced was, that the injury happened by
means of the insufficiency of the abutment, the plaintiff
had failed in support of his cause. The plaintiff contends that

the bridge and abutment are one and { Orleans, March, 1823.
the same for the purpose of this action.— } *Noyes* vs. *Morristown.*
The abutment is a component and necessary part of the bridge.

The court charged the jury, that if the injury was occasioned wholly by the plaintiff's imprudence and want of care, he ought not to recover. But if occasioned in any degree, either wholly or in part, by the deficiency in the bridge, the abutment being regarded as a part, the plaintiff was entitled to recover. It is contended that the charge was correct, and nearly in the words of the statute—creating the right of action—The words are " by means of *any* insufficiency or want of repairs,&c."—*Statute of Vt. p.*432, *s.* 13.

It is incumbent upon the towns to build their bridges, and keep them in repair, so as to prevent the chance of injury under ordinary circumstances. The court will require that towns shall build their bridges in such a manner as to afford a reasonable safety and protection to travellers—and the court will not, in making out the lines by which towns ought to be governed, create a rule which might induce negligence. Neither will the court decide that every person is bound to drive such horses as are thoroughly broke and disciplined, in order to recover against a town, in case of accident, in a case of the above description. If the town is in fault, the court will enter into the degrees of probability of loss on account of skittishness, or the restive disposition of the horse, and nothing more is asked by the plaintiff in support of the charge of the court on this point, than the principles contained in the cause of the *Winooskie Turnpike Company.*

TURNER, J. delivered the opinion of the court. In this case the defendants claim a new trial on the ground of the mis-direction of the Judge, in two particulars.

1. The evidence was, that the place where the horse fell off was a part of the *abutment*, whereas, the declaration stated that the horse fell off from the *bridge;* and the judge charged that for the purposes of this action, the abutment must be considered a part of the bridge.

2. To the charge of the Judge, that " if the jury found the loss to have been occasioned in any degree, either in whole or in part

by the deficiency of the bridge, the abutment being regarded as a part, the plaintiff was entitled to recover the amount of his loss."— As the court regard the charge to be erroneous in this point, it is unnecessary to consider the first objection. The statute (*p.* 432, *sec.* 13.) provides "That if any special damage shall happen to any person or persons, or to his, her, or their teams or carriages, by means of any insufficiency or want of repairs in any highway, or publick bridges in any town in this state, the party sustaining such damage shall have the right to recover the same in an action on the case against such town." The "special damage" for which the statute gives this action, is that which is caused by " deficiency or want of repair" of the bridge : and the person injured must show the injury to have arisen from that cause. He must show the occurrence of the specific contingency on which the statute has made his right of action to depend ; for there is but one contingency for which it has made provision. If the loss was occasioned wholly, or in part, by the negligence or misconduct of the party himself, he could not surely recover "the amount of the loss ;" the bridge may be very defective, and yet the loss may be clearly occasioned by such negligence, or misconduct, or some other cause ; and yet, on the principle of the charge, the party sustaining it, may be remunerated for his misfortune or misconduct at the expense of the town. Whether the damages may not be divisible, if the jury find the loss to be occasioned partly by his own fault, and partly by the deficiency of the bridge, is not necessary here to be determined. For on the supposition that the jury so find, the charge holds the town responsible for " the amount of the loss."

The doctrine laid down by *Parsons, C. J.* in the case of *Wood* vs. *Town of Waterville,* 4 *Mass. R.* 423, has direct application to this case. The horse of the plaintiff, *Wood,* was destroyed in consequence of a defect or want of repair of a bridge. The defence of the town was, that the plaintiff, *Wood,* was himself highway surveyor ; and that the defect in the bridge, was caused by his neglect to repair the bridge, which his duty required him to do ; and therefore he was himself in fault. Judge *Parsons* remarks, " From an examination of the act," which is similar to our own, " it

is manifest that the principle on which dam- ⎰ Orleans, March, 1828..
ages are given is that the town have ⎱ *Noyes* vs. *Morristown*.
neglected to cause repairs to be made, agreeable to the duties
enjoined on them by law, *and that the party injured is in no*
*fault*. For it cannot be presumed that the act intended to
provide a remedy for damages sustained by any man through his
own wrong." In the present case the doctrine of the charge is,
that the plaintiff is entitled to recover "the amount of the loss,"
if it is found to have been occasioned *in any degree*, in whole, or
*in part*, by the deficiency of the bridge, whether the loss arose
in any degree from his own misconduct or not.

The verdict must be set aside and a new trial granted,